Good morning, Your Honors. May I please report, Peter Butler on behalf of Spencer Franchise Services. Your Honors, the cornerstone of our contention is that there are three material yet undisputed facts in this matter. Number one, that the contract was signed as written with Section 4.2 ordering, obligating under Louisiana law WOW to sell franchises. In fact, the second undisputed fact that is material is that for five years WOW performed the contract, including Section 4.2, as written. It admits that on page 32 of its brief. So, what happens after five years is WOW no longer complies with Section 4.2, so we file this suit. Knowing that it is bound by Louisiana law. Did WOW actually create new franchises, 45 new franchises, or did they create any? What WOW did was, as a franchisor, Your Honor, it does not create franchises. It sells franchise agreements. It sells locations pursuant to a franchise agreement. Yes, it did. Did they sell any except to Spencer? They sold all of them except for the two that Spencer was obligated to open as a franchisee under this contract. Yes. How many did they sell independent of any influence from Spencer? So, in this contract they sold at least 15 over that period of time. Are these all nontraditional franchises? That is in dispute, Your Honor, and it was never resolved, but some were nontraditional and some were traditional. So, it is in dispute. We have certainly suggested that they had to be traditional so that we would get our fees, that Spencer would obtain its fees. That's the crux of this case. We needed the development of this market, the sale of these franchises by WOW, so that there would be enough franchise units operating to pay to Spencer, pursuant to this agreement, the fees to which Spencer was entitled, thereby justifying Spencer's investment into performing under this contract. So, the law of Louisiana is very clear, and we've cited it in your brief. A party is deemed to know what they sign. A party is deemed to have read it. The Perrinet case, which I love this language, and which both sides concede applies to this case when we get to error, states that signatures are not mere ornaments. Judge Davis, as a Louisiana practitioner, you know the influence which is afforded to a written contract. So, what happens is they're bound to error. They're relegated to claiming error. That's all they can claim. And they say, well, franchisor should have been developer in the second paragraph of section 4.2. Well, that's like changing yes to no. That's changing WOW to Spencer, after they had performed, pursuant to that contract, as the seller for five years. Your Honor, if you look at the second to last paragraph, I'm sorry, the second paragraph in section 4.2, the last sentence, and this is not in our brief, but I want to call it to your attention, and I apologize for it not being in our brief. It says that the sale occurs upon the complete execution of the franchise agreement. That's when the sale occurs. We could never do that. Spencer was not the franchisor. The franchise agreement is the bilateral contract between WOW as the franchisor and some third party as the franchisee, with the exception of those two franchise locations that Spencer was obligated to open. So, the lower court, I suggest, misread section 4.2, particularly that first paragraph. Not only did it misread it, the lower court ignored many other provisions of the contract, not the least of which is the right of first refusal. You know, when you read that sentence in question, it starts off talking about developer's obligation. Correct. In addition to developer's obligation to open its own franchise units, comma, and then instead of saying another, you know, another obligation of the developer, then they switch over to franchisor. That's very difficult to see how they would have structured the sentence that way if it didn't mean developer. Well, first of all, Your Honor, it was drafted by WOW and WOW's attorney. Second of all, it was performed under Article 2053 of the Civil Code. If there is ever a doubtful term, one looks to several things. Other terms of the contract, which I'll get to, and usage. And what was the usage here for five years? The usage here for five years was as written. But let me talk about, as Judge, with all due respect, it says, in addition to developer's obligation to open its own franchise units, as described above. So you've got to go to the paragraph before, the first paragraph of Section 4.2. And as described above, only refers to the two stores, the two stores that Spencer is supposed to open. Doesn't refer, that's what it's referring to. So remember what the cause of this contract is about. And I'm going to get to that. The cause of this contract is about Spencer's going to pay money to WOW. And in return for that, and it's going to have these development rights. Look at the first sentence in Article 1 of this contract. It doesn't say it's an obligation to sell. It's a developer's agreement. Let me ask you a question. Yes, sir. Along those lines, I thought I understood that they were in this particular contract provision, appeared in other, in their standard form that they were utilizing. Your Honor, we don't. In other words, your argument, as I understand it, is look at this thing, this neatly fits and describes the situation we have. It's tailored to fit your situation. And my question to you is, yes, but apparently, as I read the briefs, that they were, this was a standard form provision that they had been using for some time, and that's exactly the same way. Your Honor, you're getting into some issues that aren't in the record. Now, they can cut different ways, but. You're getting into some issues that aren't in the record. But it doesn't jive with the notion that this particular repetition of the word franchise lawyer, the word in that development clause, was tailored to your particular, to Spencer's particular situation. It appears that it's consistent with arguing that this was a mistake made in a form earlier, and it just got perpetuated. Your Honor, we don't know if there were other lawsuits surrounding this clause. We don't know. That's beyond the record. So the question that you're asking, I'm suggesting, may have been answered at trial. Kevin, you don't need to know than any other suits. If it's in the standard form that's being used, it does suggest that it wasn't tailored to your particular situation. It was not tailored to our particular situation. I would suggest that the entirety of Section 4.2, both paragraphs were the standard, that if they had an area development agreement with another party, they too were obligated to open up their own franchise agreements. In addition, though, the franchise or, wow, had to open up additional locations, which is the traditional role of the franchisee. The end in this particular case was specifically how Spencer was to be paid. Let's look at the right of first refusal. That doesn't make sense, Your Honors, if you have that right of first refusal as, wow, interprets his contract. If wow was selling the contracts and selling the franchises, of course the right of first refusal makes sense. Spencer was offered that. But if Spencer is obligated to sell the franchises, it's going to offer itself the right of first refusal? That makes no sense at all, Your Honor. That's not how this worked. It's not how it worked for five years. The testimony was there were rights of first refusal provided by wow to Spencer, and Spencer exercised some of them. Now, let's talk about cause. What does the first paragraph of this Article I say? It says this is a development agreement. Then it states in Section 2.1, kind of answers this question for us, as consideration for the development rights granted herein, the rights granted in Section 1.1. As Your Honors know by now because you've all been on this Court a long time, in Louisiana we don't use the word consideration. We use the word cause because we've got to be different. But I found a case when I was preparing for this last week. It gets to one of the district court's errors. Is cause, is the determination of cause, which Judge Barbier never got to, which is a fatal error in my opinion, is that an issue of law or is it an issue of fact? And believe it or not, I couldn't find a case until yesterday. And it's an 1848 Louisiana Supreme Court case. Steele v. Groves, and it's never been overruled according to Westlaw's shepherdization. And it holds that the determination of consideration, which means at one point our jurists did use the term consideration, is a question of fact. It's an issue of fact. So what did Judge Barbier do? He ruled... I shouldn't take it personally. What did the trial court do? The trial court ignored, in ruling against this, ignored the word as written. And he ignored the performance. And found, essentially, well, he held. Because what did he say? He said, interpretation of a contract is an issue of law. And so that is true. But, Your Honors, finding of error is not. And I would submit to you the crux of my argument is no reasonable jury, which is the standard here, no reasonable jury could find error in light of all of the terms of this contract, performance as written. It's clear the question of fact that prevents summary judgment, arguably, is that that word, according to your client who gave an affidavit and apparently deposition testimony, that that was intentionally put into that contract and was specifically told to him by the agent of WOW that that is what was supposed to be in there before they signed the contract. Isn't that right? No, sir, Your Honor. That's not my understanding. Moreover, there's a non-integration clause in this case, in this contract. I thought that was a friendly question. What I believe happened was my client requested certain changes and he was told by WOW, we're not going to make any changes to the underlying contract. If you want to make any changes, we'll adjust with an addendum. And nobody's claiming the addendum is relevant here. That was my client's testimony. They wouldn't allow any changes to the contract itself, what we're talking about here. Any changes? I thought there was where he expressly admitted that the word for the franchisor was intentionally put where it was. He didn't say that? No, he did say that. Yes, Your Honor. That's what I asked you first. My mistake. And if he said that the party opposite intentionally put the word in there, franchisor, and was assured that that's what he meant and he relied on it, which I understand his testimony to be, then there is a question of fact about it, certainly for the jury. I mean, I guess the other side has denied it. But that's a question of fact. Your Honor, I would suggest to you... Prevent summary judgment unless you just, as part of the district court, don't even address that. Your Honor, the district court didn't address cause. As Judge Davis knows as a Louisiana scholar, you can't get to error until you get to cause because error can only apply to cause. And so a fact finder has to first look at the contract and say, is this the cause? If Section 4.2 is not the cause of the contract, then error doesn't apply. And I would suggest to you that the cause is set forth clearly in Articles 1.1 and 2.1 of the contract when it says, here are your development rights, and in consideration for that you're going to pay us this money. That's the cause of this contract. 4.2 identifies who's going to sell the franchise agreements. That is ancillary to the cause. That is not the cause. That's who does what. The cause is money, services, just like every contract. Thank you, Your Honors. Your client said that he asked whether or not you intended... Do you intend to use the word franchise over here? He asked that question? My client, you mean in discussions with why? What? In discussions with why. Oh, what he said, you mean, why are you using the word franchise over here? Do you mean that? Why would the question even arise? Your Honor, I don't know. But what I do know is that it says franchise R. Well, it grows later. I mean, that's maybe a jury argument, I guess. Well, that's a good point. You know, if we got to the jury, all this law on... Why don't you, you've got about 35 seconds here. You've been all over the map here. There's a lot to... I understand, but, you know, you've got... Tell me what your argument is, and you've got 28 seconds to do it. What do you think is the strongest argument that's going to win us? Your Honor, no reasonable jury could find error in this case under the facts that are undisputed. The contract was signed, the contract was performed, as written, as admitted on page 32, for five years, and, therefore, there should be reversal and grant our summary judgment. Alternatively, alternatively, there should be reversal and remand for a jury trial because only a jury can find error in the face of a written word... Thank you, Mr. Buckley. We've got that argument. Mr. Hatcher. Good morning, and may it please the Court. I'm Chris Hatcher on behalf of WOW Cafe and Wingering Franchising Account, LLC. This is actually, despite the length of the briefs and the amount of evidence that the parties submitted on their various motions for summary judgment, this is actually a very simple case, which is why, obviously, we encourage the adoption and the affirmance of Judge Barbier's... It always is when you're there, I believe. Exactly, and so with that, I'm going to keep things as simple as possible. There are several key issues. I'm only going to focus on a couple of them. Obviously, the issue of error is key, but before I move to that, I want to... But why in the issue of summary judgment? I mean, just the general summary judgment that there's conflict of testimony here. One party has testified that the term was intentionally used, and the other claims that it was a mutual mistake, and that is clearly a question of fact. Either one of which the jury should choose would win the case for the other side. Combine that here, and let's just let it go with that. Sure, and in response to that, I would say that I don't believe the testimony is quite as clear on behalf of Spencer saying, oh, I specifically asked about that word. Okay, well, tell us about that. Okay, so the evidence reflects, and there's extensive deposition sites both in our brief, and we argued it for nearly two hours at the lower court level. Paul Ballard, who actually signed this on behalf of Wow Cafe, he says specifically that this was a mistake, and he relied on his attorney at that time to draft this and make sure it was appropriate. He says he read it. He says he didn't see it. Steve Carty, who was their agent at the time and who is arguably now a disgruntled employee, he certainly had no love for my client during his deposition. He said this was clearly a mistake. It was against the intent of the parties. Obviously, we didn't depose their attorney at that time. But what did the plaintiff say in this case? So the plaintiff in his deposition testimony, because I asked him specifically about a particular set of e-mails, during this time there was an e-mail that was sent from Spencer to Wow surrounding the negotiations of this contract where Spencer says, I'm going to set up two companies, one for operations and one for sales of franchises. Now, why would he be setting up a second company to sell franchises? I'm trying to clarify what is apparently a misunderstanding on my part because I thought that Mr. Spencer testified specifically that one of your agents, the primary agent he was dealing with, was asked by him, or in a conversation with him, he was told specifically that franchisor was the term that was meant at the point where it is controversial in this case. And if that's true, if that's true and the jury believed it, you would lose. All right, did he say that or did he not? That's not my understanding, my recollection of his testimony. What did he testify to in that respect? During his deposition, when I asked him about those emails, which seemed very inconsistent with that line of thought, he said that that was for sales there. So that was also going to be for operations. He didn't intend to sell anything. So he did testify during his deposition that he did not intend to sell. That's not what he tried to do. He didn't say, oh, I spotted this, I asked him to change it, and then he slipped one in. Okay, what does he say in his affidavit? As I understand, he had an affidavit. I was confused about whether the affidavit preceded or postdated the deposition. It postdated the deposition, is my understanding. Okay. In his affidavit, he said exactly what I just said, that he didn't intend to sell and that this was a mistake. Did he correct his deposition? No, he confirmed it. I don't know that the questions lined up that clearly between his deposition and his affidavit. During his affidavit, he clearly stated the argument that he was going to sell. Your deposition comes back, and the rule is you can change your testimony, but then, of course, it's subject to comment. Sure, there's no corrective. But he just filed later in response to the summary judgment, filed an affidavit. That's correct. And Judge Barbier considered all that evidence, and he considered the contract itself and determined that this contract, as written, simply does not make sense. This testimony is inconsistent, and as written, this contract leads to absurd consequences, which is the legal standard. Judge Barbier is well within his right to interpret the language of a contract. Let me ask you a question. I got the sense that a good trial judge here was treating this as a legal question, a mutual mistake, and not clear how you get there without some resolution to these underlying conflicting testimonies. Well, I think the reason that you can get there is because if Mr. Spencer's testimony is deemed true and his contract is enforced as written, the contract is absurd. It's contradictory throughout the contract. In what way? For instance, and I cite this in our brief, throughout Section 4.1, which directly... Let me start with one. You said that he thought it was inconsistent... Yes. ...with his statement about whether he was... in that he testified in his deposition he was going to set up a separate sales company. Yes. But then he offered an explanation as to what that really meant, as to why he did that. It's not on his face it sounds plausible. I don't know whether it's right or not. So it's not... That statement is not an uncontested statement. I think on its face it's implausible and it's inconsistent with the contract as written. Okay, let me ask you, do you concede that where it says, in addition to developers' obligation to open its own franchise units as described above, franchisor shall, that franchisor should be developer? Yes, that is our position. And that is the mistake that was made. That is exactly the mistake. And determining that in your favor would win the case for you, is that right? That's correct. And the lower court agreed. And if they decide that that is correct, you lose the case, right? Well, no, I actually don't concede that. The limits of the motions for summary judgment were limited. And that's one of the... I've briefed this in our brief. The prayer that has been asked for, I believe, is inappropriate. Because they request not only a reversal, but exactly what you just said. They want a judgment determining that WoW had breached contract. And I don't think that's actually appropriate because not only do we dispute their position, but only four of WoW's defenses were at issue on summary judgment, 13 through 16. So there's a whole bunch of other stuff that we haven't even talked about. So I think it's not accurate to say that if that goes against WoW, that equates to a ruling that we are liable for breach of contract. Because we dispute that hotly. All the argument... So we would send it back? I believe that would be the proper remedy if you enforce the contract as written. Now, all of the ancillary claims, I think that would also go the same way. Because all the ancillary claims are tied to the existence of this contract. He has claims against you for fraud and other matters, which would be answered if the word is read in your favor. But if it's left in there, then you've got to defend those allegations. But they weren't resolved by motion. Exactly. They were predetermined as soon as the judge made the ruling on this contract needs to be thrown out and needs to be reformed or rescinded, which he actually gave us the option in court to make a decision on that. We went back to him afterwards agreeing to rescind the contract subject to this appeal. Let me ask you a record question. We talked about the discussion that Spencer had with Ballard during the signing of the contract. I think this is a quote from Spencer's affidavit where he says, Mr. Ballard said that WoW intended that it was WoW's responsibility under the document to sell the franchise agreements in accordance with Schedule 2. Now, you kind of danced around that. Do you admit that's in the statement? Yes. Okay. I also believe it's inconsistent with every other piece of evidence in this case. Okay. Well, why isn't that for a jury to determine? He said that. I think it would be a jury question. You've got to call him a liar, don't you? I think credibility is an issue. However, I think we only get to credibility when we don't usually, you know. Credibility is only an issue if the contract can be enforced. We don't often say that. I would only say that credibility only becomes an issue if the contract can be enforced, and the contract as written makes no sense, which the lower court said. Well, no, it's a jury question. Well, I don't think it's a jury question. Does the jury believe the man or does he not believe him? And you say you can't believe this man because let me look at the contract. That's why he didn't say that. If this was not consistent with his conduct and you attack his credibility, and then the jury decides, well, the man is either saying that it was intended to be franchisor or it was intended to be developer and decide who wins. Well, and I agree that all those facts were presented to the lower court. However, the lower court said, despite all that, we don't even get to that. This is an issue of law. I'm interpreting a contract based on what it says. It can't be a mutual mistake if one party takes one side and says it's not a mutual mistake, I didn't intend it, and the other side said I did intend it. I mean, that's not mutual. Well, they dispute that it's a mutual mistake. We said it was a mutual mistake. And they dispute it on the basis of credibility. I mean, you have the burden of proving a mutual mistake. Right. And so, you know, you've got, you're faced with this possible statement by your own representative who was representing the company at the time of the signing saying that they intended that WOW would sell the units in accordance with Schedule 2. Well, I don't concede that fact. I concede that Spencer said that. I understand, but that's... I don't say my guy said that. But that's going to be evidence in the case, presumably. Your guy would deny it, I assume. Any chance? Well, I'm sure he does. Because if he admitted it, that'd be the end of the deal. Well, I think while the credibility of the witnesses certainly came before the court, a common-sense approach to this case, which is all that the lower court did, they looked at this thing and said, does this make sense? And they said no. There's a reason that common sense is called common. 12 persons in the box. There used to be 12. Well, and I'd like to turn just to address briefly some of the specific arguments that have been brought up earlier today. Do you maintain at all that the judge was correct in determining this was a pure legal question without regard to the underlying facts? He seemed to say this is a purely legal question determinable by me. As I read what he was saying, it's not quite clear, but I thought the judge up here is a good judge, and that's the way he was taking it, and I think he thought he was ending the case. I agree that that's the position he took, and I believe it was appropriate. Well, I mean, I don't think the judge, I mean, his opinion was very credible in terms of the interpretation of the contractor. Yeah. Right, and if we get to the interpretation of the contract, then what the witnesses and these lay people thought about this contract doesn't even matter. As written, this contract is counterintuitive. It says different things about different... It says, literally, if we read this the way that they want us to read it. Franchise orders were required to sell under 4.2, and they're required to sell. Why didn't you say something about it over all those years that it was in force? Well, I think for a significant amount of this time, I was unaware of the problem. This is a template that you use in other, most other... The same mistake appears in other... Certainly, and it's... I mean, in certain words, you know, an inexcusable unilateral mistake. Well, and certainly as soon as Wow became aware of this mistake, it was changed in those forms. It took a little too long for it to be excusable. Right, well, and that's why I wanted to address what Spencer had said about Wow acting consistent with the contract as written, because I think that's not only disingenuous, it's completely untrue. The nontraditional versus traditional distinction was discussed at length in the motions for summary judgment, and it has a big impact on this because Wow specifically carved out the nontraditional locations. So Spencer, on one hand, in this appeal, is saying that Wow acted consistently with the contract, but then they sued Wow for breach of contract. How can you... Which one is it? We either did it or we didn't. We say we didn't. We say in the alternative, okay, if this is enforceable as written, they just said that we sold 15 franchises. If you look at the timing of this case, it means there is no breach of contract for lack of sale. So either way, Wow ended up winning that argument. But we disagree with its use here because we believe it skews the intent of the parties and what the contract actually reads. In Section 4.2, if you enforce it as written, Wow is obliged to sell. However, in Section 5.2.1, developers are obliged to sell. So if it goes back, and we go back and look at this, and it's not reformed or rescinded, both parties are in breach. There's no way... Somebody has to be responsible for selling, and somebody has to not be responsible for selling. But who was responsible for selling the franchises in Georgia put aside the nontraditional? The developer was responsible for selling, and that's consistent with recitals in the contract. So outside the initial two, he sold not a single one thereafter for several years. Is that correct? That's correct. Where is the correspondence complaining about performance of that? Well, he probably should have been defaulted. He wasn't. I'm sorry? He probably should have been defaulted for breach of contract. He wasn't. Okay. He ended up getting defaulted for breach of contract. The fact that you tolerated that, though, certainly... Well, that's actually... That's your argument now. That's actually what started this litigation. It's because Wow defaulted him after five years, and then he sued us back for... Five years ago. You haven't sold a single one over there. That's exactly right. All you're doing is selling nontraditional locations over at Georgia Tech and Georgia State. Right. Well, and that's exactly right. So we said, you haven't been selling. Spencer responded by saying, I want royalties for all the nontraditional locations. And here we are three and a half years later in front of the United States Fifth Circuit. It became an issue of hurt feelings and interpretation of a contract by people that didn't understand what they were signing. And honestly, a one-page mistake that's turned into a, at certain times, a claim for $30 million. You're going to have a hard time selling the fast foods of any kind at Georgia Tech with a bar seat right across the street. That's the world's largest drive-in. It's a good model for those nontraditional locations. That's a Yellow Jacket drive-in. But generally, I mean, I don't want to repeat what I've already said. So I'm just going to pray that the lower court's judgment is affirmed. This is an issue of law based on interpretation of contract. There was a mutual mistake as borne out by the evidence presented to the court and the contract itself. And that's our prayer. Thank you. Thank you, Mr. Hatcher. Mr. Butler. I have no rebuttal, Your Honor. Thank you, and I hope your morning is not like the rest of your day.  True disargument, Your Honor. Thank you very much.